**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CRYSTAL M.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br><br>Defendant. | Civil Action No. 22-2381 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Crystal M.[1] brought this action seeking to reverse one aspect of the decision of defendant Frank Bisignano,[2] Commissioner of Social Security ("Commissioner"), partially denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 405(g). While the Commissioner found that plaintiff was indeed disabled and eligible for benefits, he disagreed as to when that condition began, and this case concerns plaintiff's effort to challenge the onset date, which controlled when she was entitled to begin receiving those benefits.

1 The Court has partially redacted plaintiff's name in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and the Clerks of the U.S. Dist. Cts. (May 1, 2018), available at: https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Oct. 19, 2026).

2 Frank Bisignano, Commissioner of Social Security, has been substituted for previous defendants Kilo Kijakazi and Martin O'Malley, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Plaintiff filed a motion for judgment of reversal of the decision, *see* Pl.'s Mot. for Judgment of Reversal ("Pl.'s Mot.") [Dkt. # 10], and the Commissioner filed a motion for judgment of affirmance. Def.'s Mot. for Judgment of Affirmance and in Opp. to Pl.'s Mot. ("Def.'s Mot.") [Dkt. # 14]. The motions were fully briefed,[3] and the Court referred the matter to a Magistrate Judge for a Report and Recommendation, which was issued on July 11, 2024 ("R&R") [Dkt. # 17]. The Magistrate Judge recommended that the Court uphold the Administrative Judge's determination that plaintiff was disabled as of September 2020, and plaintiff filed timely objections to the R&R. *See* Pl.'s Objections to the R&R ("Pl.'s Obj.") [Dkt. # 18]. The Commissioner has responded. *See* Def.'s Resp. to Pl.'s Obj. to R&R [Dkt. # 19] (Def.'s Resp."). For the reasons below, the Court agrees with the Magistrate Judge that the Commissioner's decision partially denying plaintiff's claim for benefits should be affirmed. The Court will **ADOPT** the R&R in its entirety, and therefore, plaintiff's motion for judgement of reversal will be **DENIED** and defendant's motion for affirmance will be **GRANTED**. The Court underscores that plaintiff's ongoing receipt of SSI benefits will not be disturbed.

## BACKGROUND

### I. Statutory and Regulatory Background

Congress enacted the Social Security Act (the "Act") in part to support disabled individuals who are unable to work. *See Helvering v. Davis*, 301 U.S. 619, 640–45 (1937) (outlining the Act's general purposes); *Flemming v. Nestor*, 363 U.S. 603, 608 (1960). Under the Act, a claimant must establish they are "under a disability" to qualify for disability or Social Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(B). The Act defines disability as the

---

3 *See* Def.'s Mem. in Supp. of Mot. Def.'s Mot. and Opp. to Pl.'s Mot. [Dkt. # 15]; Pl.'s Reply to Def.'s Mem. in Supp. for Judgment of Affirmance [Dkt. # 16].

"inability to engage in substantial gainful activity" because of a physical or mental impairment which will foreseeably end in death or last for at least 12 consecutive months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Accordingly, a person is disabled under the Act when their impairment is so severe that they cannot perform their previous work or serve in other jobs in the national economy. *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step test to evaluate whether a person is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth the mandatory test an ALJ must follow). First, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the ALJ considers whether the claimant has at least one severe "medically determinable" impairment. *See id.* §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). A severe impairment "significantly limits" a claimant's physical or mental abilities to perform basic work functions. *Id.* §§ 404.1520(c), 416.920(c). Third, the ALJ determines whether the claimant's impairment(s) are among those disabilities in a regulatory listing that conclusively establishes disability. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant satisfies step three, they are disabled under the Act and eligible for benefits. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

If a claimant has not yet established a disability, the fourth step is that the ALJ assesses the claimant's "residual functioning capabilities" ("RFC") and whether the claimant can perform their past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). At step five, the ALJ considers whether the claimant can perform other jobs that exist in significant numbers in the national economy considering the claimant's age, education, work experience, and RFC. *See id*. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). The claimant bears the burden of proof for the first four steps. *Butler*, 353 F.3d at 997. At step five, the burden shifts to the Commissioner to demonstrate the claimant can perform other work. *Id.*

The ALJ is obliged to consider all the claimant's mental or physical impairments, including any related symptoms, as well as the opinions of medical professionals. *Id.* The ALJ may ask a vocational expert to testify about whether the claimant can perform other work. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e).

## II. Factual Background

The Court adopts the factual background and procedural history set forth in the R&R, and will focus on those facts that bear on plaintiff's objections.

On June 12, 2018, plaintiff applied for SSI benefits, claiming disability beginning on March 1, 2016, due to fibromyalgia, carpal tunnel syndrome, bipolar disorder, sleep apnea, arthritis, hypertension, migraine disorder, degenerative joint disease, and knee osteoarthritis. A.R. [Dkt. # 7] 208, 232, 32.[4] Plaintiff claimed that she stopped working in July 2006 "[b]ecause of [her] condition(s)." *Id.* at 232. The SSA initially denied plaintiff's claim on March 14, 2019, and did so again after reconsideration on August 29, 2019. *Id.* at 104–106, 122–124.

---

4 All citations to the Administrative Record are to the page numbers in the ECF headers.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and that hearing took place on October 27, 2020. He heard testimony from plaintiff and a vocational expert and considered opinion evidence supplied by ten medical professionals, including Nurse Practitioner ("NP") Kristie Quarles, plaintiff's primary care provider, and Dr. Benjamin Adewale, a psychiatrist. *See* A.R. 42–48. The ALJ found many of the professionals' opinions to be persuasive, but found NP Quarles's and Dr. Adewale's opinions unpersuasive largely due to a lack of support in their own opinions for the conclusions they reached and a lack of consistency with the rest of the evidence. *Id.* at 43–44, 46–47.

On November 23, 2020, the ALJ applied the five-step test and issued a decision that plaintiff "was not disabled prior to September 7, 2020" – when she turned 55 years old – and that before that date, she was capable of performing a range of light, unskilled work despite her physical and mental impairments. The ALJ also found that, beginning on September 7, 2020, plaintiff "became disabled" and "continued to be disabled through the date of the [ALJ] decision." A.R. 30. The ALJ's decision turned on the application of a Social Security regulation that placed plaintiff in a new "age category" when she turned 55 years old. *See* 20 C.F.R. § 416.963(e) (when a person reaches an "advanced aged . . . [of] 55 or older, age significantly affects a person's ability to adjust to other work."). On September 29, 2021, the Appeals Council denied plaintiff's request for review of her disability onset date, and the ALJ's decision became the final decision of the Commissioner. Pl.'s Mot. at 12.

**STANDARD OF REVIEW**

A federal district court has jurisdiction to hear a civil case challenging a final decision of the Commissioner of Social Security, 42 U.S.C. § 405(g), but the scope of review is limited. "The Commissioner's 'ultimate determination' about entitlement to benefits 'will not be disturbed if it

is based on substantial evidence in the record and correctly applies the relevant legal standards.'" *Cox v. Kijakazi*, 77 F.4th 983, 990 (D.C. Cir. 2023), quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted); *see also Butler*, 353 F.3d at 999 (describing substantial evidence as "more than a scintilla, but . . . less than a preponderance"). The Court must carefully scrutinize the record for substantial evidence but may not reweigh the evidence itself, *see Reyes v. Sec. of Health, Education, and Welfare*, 476 F.2d 910, 914 (D.C. Cir. 1973), as judicial review in this context is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).

When, as here, the issues come before a district court by way of a magistrate judge's Report and Recommendation, the Court must apply "a *de novo* standard of review." *Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013). In ruling on objections, the Court may "accept, reject, or modify, in whole or in part," the Magistrate Judge's recommendations. 28 U.S.C. § 636(b)(1)(C). A court need not review those portions of a Magistrate Judge's report to which no objection is made. *See Callaway v. Berryhill*, 292 F. Supp. 3d 289, 293 (D.D.C. 2018).

**ANALYSIS**

Plaintiff objects to the R&R on the grounds that the ALJ did not properly evaluate the opinions of two medical professionals: NP Quarles and Dr. Adewale. *See* Pl.'s Obj. at 2–8.

Social security regulations require an ALJ to consider the following factors when evaluating medical opinions: (1) supportability, (2) consistency, (3) the medical source's

relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). Of these factors, supportability and consistency are the "most important." *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). "Supportability" focuses on the strength of "the objective medical evidence and supporting explanations" underlying a medical source's opinion, while "consistency" looks at how strongly a medical opinion aligns with "evidence from other medical sources and nonmedical sources." *See id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). In other words, as another court in this district put it, the "supportability factor is 'an *internal check* that references objective medical evidence and supporting explanations that come from *the source itself*,' whereas the consistency factor is 'an *external check* that references evidence from *other medical and nonmedical sources*.'" *Tracey L. v. King*, No. 23-cv-2581, 2025 WL 1276804, at *4 (D.D.C. Jan. 23, 2025), quoting *Bright v. Saul*, No. 1:19-cv-0504, 2020 WL 4483008, at *3 (M.D.N.C. Aug. 4, 2020). And an ALJ must explain their consideration of these factors, but "there is no specific format required." *David W. v. Kijakazi*, No. 21-cv-03370, 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023). An ALJ does not even need to use the terms "supportability" and "consistency" expressly, so long as "there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *Id.* (collecting cases).

## I. The ALJ's finding that Nurse Practitioner Quarles's opinions had "limited support" was consistent with substantial evidence in the record.

Plaintiff's first objection is that the ALJ did not properly evaluate the "supportability" of the medical opinion of NP Quarles, and that the Magistrate Judge erred by not providing "further insight into the vague and inaccurate explanations provided by the ALJ." Pl.'s Obj. at 2–4. At the time of the administrative hearing, NP Quarles offered several opinions, asserting that, among other things, as of October and November 2018, plaintiff "can only sit and stand or walk for a total

of less than two hours in a workday;" "can only lift and carry up to ten pounds of less;" can "perform only frequent turning of the head and occasional stooping, bending, squatting or kneeling;" can "perform only occasional reaching and handling and only frequent fingering, feeling, pushing, and pulling with the upper extremities;" and she would "likely miss work three times per month." A.R. 43. The ALJ found these opinions to be "unpersuasive," primarily because, in the ALJ's view, NP Quarles provided "limited support" for her conclusions. *Id.* at 4344.

Plaintiff contends that Ms. Quarles provided ample evidence to support her opinions, and she points to other evidence that she submits should have led the ALJ to a different result. Pl.'s Obj. 3–4 ("Ms. Quarles's findings were supported by bloodwork and laboratory results, X-rays, fibromyalgia diagnosis, and observations of [plaintiff's] pain management prescriptions"). Plaintiff challenged the ALJ's view of the supportability of the Nurse Practitioner's opinion in the motion for reversal, *see* Pl.'s Mot. at 13–17, and the Magistrate Judge considered and rejected that argument. *See* R&R at 19–24 ("[T]he undersigned finds that the ALJ . . . adequately considered the supportability . . . of NP Quarles's opinions in determining the weight to give them, and that his determination that the opinions were 'unpersuasive' was supported by substantial evidence.").

After its own de novo review of the record, the Court agrees with the Magistrate Judge that there is substantial evidence to support the ALJ's finding that NP Quarles had only "limited support" for her opinions. Both the ALJ and the Magistrate Judge acknowledged there was "some" support for NP Quarles's opinions, including plaintiff's complaints of "generalized pain throughout her body," "periodic swelling," and "x-rays of her lumbar spine." A.R. 44. And it is worth noting that NP Quarles had been treating plaintiff since 2015 and that her symptoms of generalized pain had been documented since the first evaluation the Nurse Practitioner conducted.

A.R. 432. Still, the ALJ emphasized that this evidence was limited and that NP Quarles's opinions did not appropriately account for other evidence that pointed to a different conclusion: particularly the fact that "at other times throughout the past three years, records show that [NP Quarles] has repeatedly observed [plaintiff] to be in no apparent distress," a "normal gait," "full range of motion," and "intact strength and sensation in her upper and lower extremities." A.R. 39; *see Patricia T. v. Kijakazi*, No. 21-cv-1028, 2022 WL 3583634, at *15 (D.D.C. Aug. 22, 2022) ("The fact that the ALJ contrasted [the treating physician's] proffered limitations to the relatively normal findings in his own treatment notes was a sufficient explanation of the supportability factor."). Thus, the ALJ reasonably found that this evidence undermined the persuasiveness of NP Quarles's opinion.

This is not a situation in which the ALJ ignored the existence of evidence in plaintiff's favor; he weighed the record as a whole and determined that contradictory evidence diminished the force of the record entries plaintiff chose to highlight. At bottom, plaintiff is asking the Court reweigh the evidence and reach a different conclusion, but "it is not the Court's job to second-guess the ALJ" by doing so. R&R at 21; *see Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *22 (D.D.C. June 30, 2022) ("Plaintiff gives reasons why she believes [her treating psychiatrists'] opinion was persuasive, but this invites the Court to reweigh the evidence in her favor – which the Court cannot do.") (internal citations omitted). Therefore, the Court finds no basis to disagree with the ALJ's conclusion or the Magistrate Judge's recommendation with

respect to the weight to be given the Nurse Practitioner's testimony regarding the extent of plaintiff's disability prior to September 2020.[5]

## II. The ALJ's findings regarding the supportability and consistency of Dr. Adewale's opinions were supported by substantial evidence.

Plaintiff's second objection to the R&R is that the ALJ did not properly evaluate the supportability or consistency of the opinion of plaintiff's treating psychiatrist, Dr. Adewale. Pl.'s Obj. at 4–8. Dr. Adewale opined that plaintiff's mental health impairments caused "marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies in concentration, persistence or pace, marked limitations of her ability to understand, remember and apply information to carry out even simple work-related activities, and extreme limitation of her ability to deal with work stress," and that she would be "absent for more than three days per month." A.R. 46. The ALJ found the opinion of Dr. Adewale to be "unpersuasive." *Id.* The ALJ noted that although Dr. Adewale provided some support for his

---

5 Plaintiff also contends that the ALJ "ignored vital portions of the evidence that lent further support to Ms. Quarles's findings," Pl.'s Obj. at 4, but the Magistrate Judge correctly observed that the ALJ was not required to list them all:

> As for the handful of additional test results [p]laintiff identifies in NP Quarles' opinions that the ALJ did not specifically mention – blood pressure readings, body mass index, and elevated "CRP" result, a low vitamin D result, an "M-spike," and an elevated "sedimentation rate," – there is no requirement that to properly analyze the supportability of a medical source's opinion the ALJ must list in his or her decision all of the objective evidence included therein. *See Brown v. Berryhill*, No. 18-cv-589, 2019 WL 4538188, at *6 (D.D.C. Sept. 18, 2019) ("[A]n ALJ does not have to state on the record every reason justifying a decision.") . . . Nor does "[a]n ALJ's failure to cite specific evidence . . . indicate that such evidence was not considered." *Id.* (internal citation omitted).

R&R at 21–22.

opinions, he was "overly restrictive" in light of other evidence in the record, including that plaintiff's psychotropic medications had "provided fairly good control of her symptoms and that her mental status examinations have been "relatively benign." *Id*. at 47.

In her motion to reverse the ALJ's determination, plaintiff complained that the "ALJ did not address how [Dr. Adewale's] opinion was unsupported" and that he "did not offer support for his opinion." Pl.'s Mot. at 17–22 ("The ALJ failed to evaluate the supportability factor and therefore violated Social Security's regulation."). This contention was rejected in the R&R, *see* R&R at 24–31. ("[T]he undersigned finds that . . . the ALJ gave adequate consideration . . . to both the supportability and consistency of Dr Adewale's opinions, and that his determination that they were 'unpersuasive' as to [p]laintiff's workplace restrictions was supported by substantial evidence"), and plaintiff has objected to that R&R.

The Court will accept the Magistrate Judge's recommendation based on its own review of the record. Regarding "supportability," plaintiff is again essentially asking the Court to reweigh the evidence and reach a different result, which it is not permitted to do. *See, e.g.*, *Butler*, 353 F.3d at 999. The ALJ did recognize that Dr. Adewale offered some support for his opinions, but ultimately found it to be insufficient. A.R. 46 (noting Dr. Adewale's "extensive detail" about plaintiff's diagnosis of bipolar disorder causing her to "experience random mood swings" and that "memory issues" that would make it difficult for her to complete tasks). Plaintiff argues here that because the ALJ recognized there was some support for Dr. Adewale's opinion, the opinion is necessarily "persuasive." Pl.'s Obj. at 5 ("The ALJ's finding of support was already indicative that the opinion should have been persuasive.") But the Magistrate Judge correctly explained, "[w]hile the supportability factor is one of the mandatory factors that an ALJ must consider in weighing an opinion, a finding by an ALJ that a medical provider's opinion is 'supported' . . . does

not necessarily lead to the conclusion that the opinion is persuasive." R&R at 26, citing 20 C.F.R. § 416.920c(b)(2), (c).

Indeed, the law requires the ALJ to consider an expert's opinion in the context of the other material in the record. 20 C.F.R. § 404.1520c(a)-(c); 416.920c(a)-(c). And plaintiff's objection to the ALJ's finding that Dr. Adewale's opinions were "inconsistent with the relevant medical evidence," A.R. 46, also falls short. The ALJ identified multiple discrepancies between Dr. Adewale's opinions and other medical evidence, including the facts that plaintiff's medications effectively mitigated her psychiatric impairments, and that plaintiff was "repeatedly observed" to seem "cooperative and well-groomed, with an appropriate affect, normal speech and motor activity, goal-directed thought processes, fair to good insight, normal judgment, normal attention, and intact memory." *Id.* And given the conflicting evidence, the ALJ's conclusion that Dr. Adewale's opinion was "unpersuasive" was reasonable. While plaintiff may disagree with the conclusions that the ALJ reached with respect to when she became disabled, it is not this Court's job to second-guess the ALJ by reweighing the evidence. *See Reyes*, 476 F.2d at 914.

## CONCLUSION

For the reasons set forth above, and upon consideration of the entire record, the Report and Recommendation [Dkt. # 17] is **ADOPTED** in full; plaintiff's motion for reversal is **DENIED** [Dkt. # 10]; and the Commissioner's motion for judgment of affirmance [Dkt. #14] is **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 17, 2026